DECISION
{¶ 1} Relator, Venture Holdings Corp., commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its *Page 2 
order granting permanent total disability compensation to respondent-claimant Thomas E. Hanna and to find claimant is not entitled to that compensation.
 {¶ 2} Pursuant to Civ. R. 53 and Section (M), Loc. R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law (attached as Appendix A). In her decision, the magistrate concluded (1) the commission did not abuse its discretion in relying on the report of Dr. Daryl R. Sybert, D.O., as the report did not contradict Dr. Sybert's previous reports and office notes, and (2) Dr. Sybert's May 9, 2006 report constitutes some evidence on which the commission could rely in granting claimant permanent total disability compensation. Accordingly, the magistrate determined the requested writ should be denied.
 {¶ 3} Relator filed objections to the magistrate's findings of fact and conclusions of law.
I. Objections to Findings of Fact {¶ 4} Relator first objects that the magistrate's finding of fact at ¶ 14 omits the first and last paragraphs of Dr. Sybert's May 9, 2006 report. Relator does not contend the magistrate misquoted the portions of Dr. Sybert's letter included in her finding of fact, but rather asserts the omitted paragraphs highlight the inconsistencies in Dr. Sybert's report.
 {¶ 5} The first paragraph of the letter both notes Dr. Sybert evaluated the claimant and specifies claimant had a previous lumbar fusion that Dr. Wyatt performed years earlier "unrelated to his Workers' Compensation claim." Dr. Sybert also acknowledges in the first paragraph that the fusion failed to heal and claimant "will likely need surgical intervention in his lumbar spine, which is not related to his Workers' Compensation claim." Nothing in that paragraph is contradictory or supports relator's *Page 3 
contention that Dr. Sybert premised his opinion on non-allowed conditions. To the contrary, Dr. Sybert explained claimant's lumbar fusion was unrelated to his workers' compensation claim.
 {¶ 6} Similarly, while the last paragraph of the May 9, 2006 report notes the correlation between the surgery Dr. Sybert performed and the condition allowed in claimant's industrial claim, it also "separates out his lumbar fusion, which is a separate entity." As with the initial paragraph, Dr. Sybert carefully considers the radiculopathy apart from claimant's prior lumbar fusion. Because neither paragraph creates the confusion relator contends, the magistrate's omission of the first and last paragraphs of Dr. Sybert's May 9, 2006 report is inconsequential.
 {¶ 7} Relator's also objects to the magistrate's factual finding in ¶ 1, contending it errs in stating claimant's allowed condition to be lumbar radiculopathy when the allowed condition actually is lumbar strain with radiculopathy. Relator fails to explain how the difference in terminology is significant in resolving the issues presented in this mandamus action. Absent some indication that the variation adversely affects relator, relator's point is not persuasive
 {¶ 8} Relator's objections to the magistrate's findings of fact are overruled.
II. Objections to Conclusions of Law {¶ 9} In challenging the magistrate's conclusions of law, relator contends the magistrate wrongfully concluded the commission properly could rely on Dr. Sybert's May 9, 2006 report, as the report is contradicted by his previous reports and office notes and subsequent objective testing. Relator's objection reargues those matters dealt with *Page 4 
adequately in the magistrate's decision. For the reasons set forth in the decision, the objection is not persuasive.
 {¶ 10} For example, relator contends the magistrate erred in concluding Dr. Sybert continually stated claimant's radiculopathy was related to damage caused to the claimant's nerves following the July 7, 2004 surgery Dr. Sybert performed for relator's allowed condition. In challenging the magistrate's conclusion, relator notes "[i]t is only on [sic] the November 11, 2004 report of Dr. Sybert * * * that Dr. Sybert states that the claimant's leg numbness might be linked to damage resulting from the July 7, 2004 surgery * * *." (Objections, 2.) Relator continues by stating "[t]he only other place where Dr. Sybert states that he feels that the radiculopathy is due to the work related injury is in his May 9, 2006 report * * *." Id. Relator thus does not seem to contest the magistrate's conclusion that Dr. Sybert so stated. Rather relator's argument appears to resolve to a contention that the magistrate should not have characterized Dr. Sybert's statements as continual. Whether or not he did so continually, Dr. Sybert made the statement at issue.
 {¶ 11} Relator next contends the magistrate erred in concluding Dr. Sybert indicated that claimant's "numbness might be linked to the damages resulting from the July 7, 2004 surgery." Id. at 3. Relator contends the magistrate was not correct, "and, if you look at the November 11, 2004 report * * * nowhere does Dr. Sybert make such a statement in this office note." Id. Yet, as noted, on the previous page of its objections, relator asserts "the November 11, 2004 report of Dr. Sybert * * * states that the claimant's leg numbness might be linked to damage resulting from the July 7, 2004 surgery done by Dr. Sybert * * *." *Page 5 
 {¶ 12} The November 11, 2004 report actually states claimant presented with "leg numbness" that "may represent neuropathy or just nerve damage from his stenosis," a statement the magistrate includes in her findings of fact at ¶ 8. In his subsequent May 9, 2006 report, Dr. Sybert states, "[w]hat is related to his Workers' Comp claim [is] his lumbar radiculopathy for underlying spinal stenosis." The magistrate's conclusion, subject of relator's argument, thus is in accord with Dr. Sybert's note and report when the two are read consistently.
 {¶ 13} In the final analysis, the commission relied on the May 9, 2006 report of Dr. Sybert, the only report Dr. Sybert issued on whether claimant is permanently and totally disabled. In that report, Dr. Sybert states that although the lumbar fusion is unrelated to the industrial claim, the lumbar radiculopathy for underlying spinal stenosis is related to claimant's industrial claim. Dr. Sybert explained that claimant "had pre-existing spinal stenosis but due to his work related injury his severe leg pain was created and caused." As a result, Dr. Sybert concluded claimant has "continued neuropathic leg pain related to his radiculopathy, which is an allowed condition on his industrial claim." To his opinion he offered an addendum that states "I believe [claimant] is permanently and totally impaired due to the medical conditions recognized for which I have treated him in his workers' compensation claim no. 03-807390." Given Dr. Sybert's statements in his only report to address the issue of permanent total disability compensation, the commission did not abuse its discretion in relying on it.
 {¶ 14} Following independent review pursuant to Civ. R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact *Page 6 
and conclusions of law contained in it. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
 KLATT and SADLER, JJ., concur. *Page 7 APPENDIX A MAGISTRATE`S DECISION IN MANDAMUS {¶ 15} Relator, Venture Holdings Corp., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total disability ("PTD") *Page 8 
compensation to respondent Thomas E. Hanna ("claimant"), and ordering the commission to find that claimant is not entitled to that compensation.
Findings of Fact: {¶ 16} 1. Claimant sustained a work-related injury on February 5, 2003, and relator certified that claim for "lumbar radiculopathy."
 {¶ 17} 2. Claimant did not return to work after his injury.
 {¶ 18} 3. It is undisputed that claimant had a pre-existing back condition for which he underwent a lumbar spinal fusion of L4-S1 a few years prior to this work-related injury. By all accounts, claimant had responded well to this first surgery.
 {¶ 19} 4. Following the May 5, 2003 injury, claimant was referred to Frank J. Meszaros, M.D., for a consultation. In his May 12, 2003 report, Dr. Meszaros noted:
 * * * [H]e is a gentleman with a previous lumbar spinal fusion from L4 to S1 who initially did very well postoperatively until he slipped off a tow motor this winter landing on his feet. He immediately experienced electrical pain in the back and bilateral lower extremity pain. Symptoms have slowly been getting worse. He has been off of work due to pain. He gets pain radiating down bilateral lower extremities to the level of his foot, worse with standing and walking. He is referred today for electrodiagnostic evaluation to R/O radiculopathy.
 {¶ 20} 5. As a result of his evaluation, Dr. Meszaros concluded:
 There is electrodiagnostic evidence which is consistent with a chronic lumbar radiculopathy with no ongoing muscle membrane irritability at this time. This is most consistent with right L5 involvement and left L4 involvement.
 {¶ 21} 6. Claimant began treating with Daryl R. Sybert, D.O., who performed a decompressive laminectomy bilaterally at L3-4. The preoperative and postoperative diagnoses were lumbar spinal stenosis of L3-4 above a prior L4-5, L5-S1 fusion. *Page 9 
 {¶ 22} 7. According to Dr. Sybert's office note of September 23, 2004, claimant responded well postoperatively. His radicular right leg pain ceased, yet he continued to have residual bilateral hip pain and began noticing symmetrical bilateral foot numbness.
 {¶ 23} 8. In his report dated November 11, 2004, Dr. Sybert noted that while claimant's radicular leg pain was markedly improved, he was troubled by leg numbness. Dr. Sybert opined that his symptoms may represent neuropathy or nerve damage from his stenosis.
 {¶ 24} 9. The next report from Dr. Sybert is dated July 19, 2005. In that report, Dr. Sybert noted:
 * * * He has been to the emergency room twice for severe mechanical back and radiating leg pain. He had a lumbar fusion L4 to S1 with interbody cages completed by Dr. Dave Wyatt in 2001. I extended his fusion with a laminectomy decompression due to radiculopathy in the past.
 He was in the emergency room with progressive pain over the last week to ten days and inability to ambulate. He denies any symptoms suggestive of cauda equina syndrome.
 * * *
 He still remains in a wheelchair. He is able to stand, but unable to walk due to pain.
 Standing radiographs today do reveal loosening of his L4 screws bilaterally, no evidence of spondylolisthesis at L3-4. The remainder of his surgical site radiographs today are uneventful.
 {¶ 25} 10. A CT lumbar spine and lumbosacral myelogram were performed August 16, 2005. The findings of the CT lumbar spine revealed:
 L1-L2: Moderate diffuse bulge is seen at this level resulting in flattening of the thecal sac. Bilateral neural foraminal narrowing may be present minimally. There is decrease in the *Page 10 
anterior-posterior diameter of the central canal. Some ligamentum flavum prominence is seen.
 L2-L3: Mild diffuse broad-based bulge is seen resulting in decrease in the anterior-posterior diameter of the central canal. There is no definite neural foraminal stenosis.
 L3-L4: Moderate diffuse bulge is also seen at this level. No definite neural foraminal stenosis is present.
 L4-L5: Postsurgical changes are seen at this level. There is no central canal stenosis or neural foraminal narrowing. The hardware is intact.
 {¶ 26} 11. The lumbosacral myelogram revealed: "Some bulging is noted at the L1-L2 level. Posterior fusion of L4-S1."
 {¶ 27} 12. Claimant was seen by Dr. Sybert again on August 25, 2005. Following that visit, Dr. Sybert referred claimant to Dr. Bradly Lewis for an EMG and neurology evaluation regarding his neuropathic leg pain.
 {¶ 28} 13. Claimant's temporary total disability compensation was terminated by order mailed December 13, 2005.
 {¶ 29} 14. Thereafter, claimant filed a motion for PTD compensation in June 2006. Claimant submitted the May 9, 2006 report of Dr. Sybert, wherein he stated:
 What is related to his Workers' Comp claim [sic] his lumbar radiculopathy for underlying spinal stenosis. He underwent a lumbar decompression by me after his accident and work-related injury of 2/5/2003 at which point he basically, it appears, damaged his nerves related to the spinal stenosis above his old fusion.
 In other words, he had pre-existing spinal stenosis but due to his work related injury his severe leg pain was created and caused and it never really got any better after a decompression. Therefore, my professional medical opinion is that he's got continued neuropathic leg pain related to his *Page 11 
radiculopathy, which is an allowed condition on his industrial claim.
 His symptoms are so bad that he has failed all efforts at medication management and is under evaluation by a medical neurologist for that disorder.
 He is unable to work in any capacity related to his persistent, incapacitating leg pain.
 We have discussed today his work-related limitations and, within reasonable medical opinion, he needs to seek Medical Disability related to his Workers' Compensation injury.
 {¶ 30} 15. Dr. Sybert prepared an addendum to his May 9, 2006 report, stating:
 I informed Mr. Hanna to seek medical disability related to his workers' compensation claim as stated in my letter of May 9, 2006 as I believe that he is permanently and totally impaired due to the medical conditions recognized for which I have treated him in his workers' compensation claim no. 03-807390.
 {¶ 31} 16. An EMG performed May 22, 2006 and interpreted by Martin Taylor, D.O., revealed mild L5-S1 radiculopathies on both sides.
 {¶ 32} 17. Claimant was examined by David C. Randolph, M.D., who issued a report dated July 21, 2006. After noting his physical findings upon examination, Dr. Randolph concluded that claimant was capable of sustained remunerative employment. Dr. Randolph opined that claimant was magnifying his symptoms and that his ongoing clinical problems and treatments were directed towards unrelated and nonallowed conditions. Ultimately, he concluded:
 It is my opinion he is capable of sedentary to light physical demand characteristic level. I would note again that he is magnifying his complaints and physical examination information documented in this file does not verify the need for "permanent total disability." *Page 12 
 It is my opinion he does not require any restrictions with respect to his left knee. It is my opinion based upon his multiple lumbar surgeries and multiple diagnoses as provided through the office of his current physician of record that he should avoid prolonged work in a single position but be permitted position changes as needed. Bending, twisting and stooping can be performed occasionally. It is my opinion he can lift and carry objects weighing up to 20 pounds for short distances.
 {¶ 33} 18. The commission had claimant examined by Robin G. Stanko, M.D., on October 12, 2006. Dr. Stanko opined that claimant's allowed condition had reached maximum medical improvement ("MMI"), assessed a 15 percent whole person impairment, and concluded that claimant could perform activity at sedentary work levels with limited walking, bending and twisting.
 {¶ 34} 19. Claimant's application for PTD compensation was heard before a staff hearing officer ("SHO") on February 9, 2007. The SHO granted claimant's application for PTD compensation based upon the May 9, 2006 report of Dr. Sybert. Specifically, the SHO stated:
 The injured worker's treating surgeon, Dr. Sybert, in a report dated 05/09/2006, indicated that the injured worker's symptoms are so bad that he has failed all efforts at medication management, and that he is unable to work in any capacity related to his persistent, incapacitating leg pain. Dr. Sybert's opinion in that regard is found persuasive.
 {¶ 35} 20. Relator filed a request for reconsideration arguing that Dr. Sybert's May 9, 2006 report did not constitute some evidence upon which the commission could grant claimant PTD compensation because that report contradicted other reports and office notes from Dr. Sybert. *Page 13 
 {¶ 36} 21. Relator's request for reconsideration was denied by commission order mailed April 19, 2007.
 {¶ 37} 22. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 38} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 39} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. *Page 14 Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 40} Relator makes two arguments. First, relator argues that Dr. Sybert's May 9, 2006 report cannot be relied upon because it is contradicted by his previous reports and office notes. Second, relator argues that, standing alone, Dr. Sybert's May 9, 2006 report does not constitute some evidence upon which the commission could have relied in granting claimant PTD compensation. For the reasons that follow, this magistrate disagrees.
 {¶ 41} In State ex rel. Eberhardt v. Flxible Corp. (1994),70 Ohio St.3d 649, 657, the Supreme Court of Ohio stated:
 * * * [E]quivocal medical opinions are not evidence. See, also, State ex rel. Woodard v. Frigidaire Div., Gen. Motors Corp. (1985), 18 Ohio St.3d 110 * * * Such opinions are of no probative value. Further, equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Ambiguous statements, however, are considered equivocal only while they are unclarified. [State ex rel. Paragon v. Indus. Comm. (1983), 5 Ohio St.3d 72.] Thus, once clarified, such statements fall outside the boundaries of [State ex rel. Jennings v. Indus. Comm. (1982), 1 Ohio St.3d 101], and its progeny.
 {¶ 42} In order to address relator's first argument, a brief summary of Dr. Sybert's reports and notes is warranted. Dr. Sybert performed surgery consisting of de-compressive laminectomy bilaterally at L3-4 on July 7, 2004. On September 23, 2004, Dr. Sybert noted that claimant's right radicular leg pain was gone but that claimant had bilateral hip pain and symmetrical bilateral foot numbness. On November 11, 2004, Dr. *Page 15 
Sybert noted that claimant's radicular symptoms were improved, i.e., he did not have them daily, but he continued to suffer from leg numbness which Dr. Sybert stated might be linked to nerve damage resulting from the July 7, 2004 surgery. On July 19, 2005, Dr. Sybert noted that claimant had been to the emergency room twice with severe mechanical back pain and radiating leg pain. At that time, claimant was using a wheelchair because, although he could stand, he could not walk. Dr. Sybert noted that the radiographs showed loosening of screws bilaterally at L4 and recommended a CT scan. The August 16, 2005 CT scan showed mild to moderate diffuse bulging at L1-L2, L2-L3, and L3-L4. With regards to L4-L5, the CT scan noted post-surgical changes; however, there was no central canal stenosis and no neural foraminal narrowing (the nerve opening at L4-L5 did not show any narrowing). On August 25, 2005, Dr. Sybert recommended that claimant get an EMG. On October 4, 2005, Dr. Sybert noted that claimant had persistent radicular pain and instability in the lumbosacral area. Dr. Sybert noted that claimant did have loose screws at the L3 level and that a screw at the S1 level may be loose as well; however, he stated that radiographs did not reveal any failure of the fixation at S1-L5. Dr. Sybert noted that it was possible that claimant was displaying an occult pseudoarthrosis (an unexplainable false joint which may develop following a fracture that does not unite). In his December 13, 2005 office note, Dr. Sybert stated that, in his opinion, claimant had pseudoarthrosis with loose fixation.[1] On February 28, 2006, Dr. Sybert completed a treatment questionnaire seeking medication and supporting the EMG. Dr. Sybert stated that claimant had persistent radiculopathy symptoms in his leg, *Page 16 
severe back pain and bilateral leg pain with numbness. Dr. Sybert noted that he believed claimant had pseudoarthrosis and, in his opinion, it was related to the May 5, 2003 injury.
 {¶ 43} On May 9, 2006, Dr. Sybert authored the report upon which the commission relied in granting his application. Dr. Sybert stated:
 What is related to his Workers' Comp claim his [sic] lumbar radiculopathy for underlying spinal stenosis. He underwent a lumbar decompression by me after his accident and work-related injury of 2/5/2003 at which point he basically, it appears, damaged his nerves related to the spinal stenosis above his old fusion.
 In other words, he had pre-existing spinal stenosis but due to his work related injury his severe leg pain was created and caused and it never really got any better after a decompression. Therefore, my professional medical opinion is that he's got continued neuropathic leg pain related to his radiculopathy, which is an allowed condition on his industrial claim.
 His symptoms are so bad that he has failed all efforts at medication management and is under evaluation by a medical neurologist for that disorder.
 He is unable to work in any capacity related to his persistent, incapacitating leg pain.
 We have discussed today his work-related limitations and, within reasonable medical opinion, he needs to seek Medical Disability related to his Workers' Compensation injury.
 {¶ 44} The thrust of relator's argument is that Dr. Sybert really believes that the pseudoarthrosis is causing claimant's continued radicular pain and, as such, that pain is not related to the allowed condition in this claim which is lumbar radiculopathy. Relator also asserts that the May 22, 2006 EMG interpretation establishes that claimant's *Page 17 
radiculopathy is at L5-S1 and is not caused by the allowed conditions. This magistrate disagrees. Dr. Sybert has opined that claimant has pseudoarthrosis; however, Dr. Sybert has continually said in his office notes and reports that claimant's radiculopathy is related to damage caused to claimant's nerves following the July 2004 surgery. As such, Dr. Sybert opines that the radiculopathy is related to the work-related injury. The fact that Dr. Sybert opined that there might be something else going on does not negate his opinion that claimant's pain is related to the February 2003 injury and the July 2004 surgery performed for the allowed conditions caused by that injury. As such, contrary to relator's arguments, the magistrate finds that Dr. Sybert's May 9, 2006 report does not contradict the prior reports and office notes he authored.
 {¶ 45} Also, the magistrate finds that the May 9, 2006 report constitutes some evidence upon which the commission could rely in awarding claimant PTD compensation. First, we know that claimant's TTD compensation was terminated based upon a finding that his allowed conditions had reached MMI. As such, the magistrate finds that the omission of the statement in the May 9, 2006 report that claimant's condition is permanent does not remove it from evidentiary consideration. In his addendum, Dr. Sybert used the "magic language" that relator "is permanently and totally impaired due to the medical conditions recognized" in his claim. This is not a separate report, but an addendum. The magistrate concludes that the commission did not need to list this separately as it is part of the May 9, 2006 report. Also, Dr. Sybert had specifically stated in the May 9, 2006 report that: "He is unable to work in any capacity related to his persistent, incapacitating leg pain. * * * [H]e needs to seek Medical Disability related to his Workers' Compensation injury." Dr. Sybert stated that claimant was unable to work in any *Page 18 
capacity due to the allowed conditions in his claim. The commission relied on Dr. Sybert's conclusion that it was claimant's allowed conditions that disabled him and not some other problem.
 {¶ 46} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in finding that claimant was entitled to PTD compensation based upon the May 9, 2006 report of Dr. Sybert and relator's request for a writ of mandamus should be denied.
[1] By order dated March 29, 2006, the commission authorized the neurological consultation and bilateral lower extremity EMG and authorized medications based on the February 28, 2006 questionnaire of Dr. Sybert. However, the commission denied the request for surgery as it appeared it was for treatment of the pseudoarthrosis with loose fixation. *Page 1